UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER BROWN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:16cv376(MPS) |
| | : | |
| SCOTT SEMPLE, ET AL., | : | |
| Defendants. | : | |

## RULING AND ORDER: MOTION TO DISMISS AND
## SECOND AMENDED COMPLAINT

The plaintiff, Christopher Brown, currently confined at Cheshire Correctional Institution,

initiated this action *pro se* by filing a civil rights complaint against the State of Connecticut

Department of Correction and fourteen of its employees. The plaintiff subsequently filed an

amended complaint to add five new employees of the Department of Correction as defendants.

*See* First Am. Compl., ECF No. 7.

On December 19, 2016, the court dismissed the Fifth Amendment and Americans with

Disabilities Act claims as well as all other claims against defendants Department of Correction,

Warden Maldonado, Captains Johnson, Tuttle, Robles and Marinelli and CCT Counselor

Morrison pursuant to 28 U.S.C. § 1915A(b)(1), and all claims for monetary damages against the

remaining defendants pursuant to 28 U.S.C. § 1915A(b)(2). *See* IRO, ECF No. 10 at 9. The

court concluded that the Eighth Amendment claims for deliberate indifference to the plaintiff's

mental health needs and safety and unconstitutional conditions of confinement, the Fourteenth

Amendment claim for discrimination in violation of the plaintiff's right to equal protection of the

laws, and the Fourteenth Amendment procedural due process claims related to the plaintiff's

initial placement in administrative segregation, his continued confinement in administrative

segregation, his transfer to different phases of administrative segregation at different facilities,

and his regression back to earlier phases of administrative segregation would proceed against defendants Commissioner Semple, District Administrator Quiros, Wardens Erfe and Cournoyer, Deputy Wardens William Mulligan and Lafar, Directors of Offender Classification and Population Management Lewis and Maiga, Counselors Bachon, O'Neill and Griggs and Drs. Frayne and Gagne in their individual capacities and official capacities. *See id.*

The plaintiff moved for reconsideration of the dismissal of the claims against defendants Warden Maldonado, Captain Johnson, and Captain Robles. On May 23, 2017, the court granted the motion for reconsideration to the extent that it sought to reinstate the Fourteenth Amendment claim against Warden Maldonado, Captains Johnson, and Robles for denial of procedural due process in connection with the plaintiff's continued confinement in administrative segregation without periodic reviews, the Fourteenth Amendment claim against Captain Johnson for denial of procedural due process in connection with the plaintiff's regression back to earlier phases of administrative segregation, and the Eighth Amendment claim against Warden Maldonado for deliberate indifference to the plaintiff's mental health needs and denied the motion to the extent that it sought to reinstate the discrimination claim against Warden Maldonado. *See* Order, ECF No. 33.

On November 13, 2017, the defendants moved to dismiss the first amended complaint. In response, on December 1, 2017, the plaintiff filed a second amended complaint naming Commissioner Semple, District Administrators Quiros and Maldonado, Wardens Erfe, Cournoyer, and Mulligan, Directors Lewis and Maiga, Counselor Supervisor Bachon, Hearing Officer Griggs, Captains Johnson and Robles, Drs. Frayne and Gagne, and Mental Health Social Worker William Longo as defendants. *See* Second Am. Compl., ECF No. 53, at 1. On July 3,

2018, the court denied the motion to dismiss as moot in light of the filing of a second amended complaint. *See* Order, ECF No. 69.

The defendants have filed a motion to dismiss the claims asserted in the second amended complaint. For the reasons set forth below, the motion is granted in part and denied in part.

## I.      Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the court "accepts as true all of the factual allegations set out in [the] complaint, draw[s] inferences from those allegations in the light most favorable to the plaintiff, and construes the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted). In addition to the facts set forth in the complaint, the court may consider documents either attached to the complaint or incorporated into it by reference, "and matters subject to judicial notice." *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.*

"Where ... the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Nevertheless, a *pro se* plaintiff's complaint must state a plausible claim for relief. *Id.* (citation omitted).

## II. Facts

On November 3, 2013, at Corrigan-Radgowski Correctional Institution ("Corrigan"), plaintiff fought with another inmate, Edward Bermudez, and received a disciplinary report for fighting and a disciplinary report for assault. (Second Am. Compl., ECF No. 53, ¶¶ 43, 46, 65-66; Exs., ECF No. 53-1 at 1-3.) Later that day or the following day, the plaintiff met with a disciplinary investigator and decided to plead guilty to the charge of fighting. (*Id.* ¶¶ 44, 66.) The investigator indicated that in exchange for the guilty plea, the plaintiff would be sanctioned as follows: seven days of punitive segregation, thirty days of commissary and sixty days loss of telephone privileges. (*Id.*) The investigator did not mention possible placement in the Administrative Segregation Program as part of the sanctions. (*Id.* ¶ 45.)

A lieutenant copied the front of the disciplinary report including the assault charge. (*Id.* ¶¶ 46, 67-69.) An investigator copied the back of the disciplinary report charging the plaintiff with fighting that included the plaintiff's signature and guilty plea. (*Id.*) The lieutenant then put the copy of the front of the report charging the plaintiff with assault together with the copy of the back of the disciplinary report charging the plaintiff with fighting that also included the plaintiff's signature and guilty plea and placed both copies in the plaintiff's master file. (*Id.*) These two copies made it appear as if the plaintiff had been charged with and had pleaded guilty

to assault and formed the basis of the plaintiff's arrest for assault and placement in administrative segregation for four years. (*Id.* ¶¶ 46, 69, 71.) The process summary report for the disciplinary charge of assault indicated that the plaintiff had pleaded guilty to the charge of Assault/A and had been sanctioned to seven days of punitive segregation, thirty days of commissary and sixty days loss of telephone privileges and the forfeiture of ten days of Risk Reduction Earned Credits. (Exs., ECF No. 53-1, at 24.)

On November 4, 2013, Scott Erfe, who was the warden at Corrigan, sent a memorandum to District Administrator Quiros and Director of Offender Classification and Population Management Lewis recommending the plaintiff's placement in the Administrative Segregation Program at Northern Correctional Institution ("Northern") because of his involvement in the assault on another inmate that led to that inmate's transfer to an outside hospital for treatment of a serious head injury. (*Id.* ¶ 75; Exs., ECF No. 53-1, at 43.) Later that day, Director Lewis, District Administrator Quiros, and Warden Erfe transferred the plaintiff from Corrigan to Northern and he was immediately placed in the Administrative Segregation unit. (*Id.* ¶¶ 16, 23.) The plaintiff did not receive notice of or participate in a hearing prior to his transfer to Northern. (*Id.* ¶ 17.)

On November 21, 2013, Counselor Bachon delivered to the plaintiff a notice indicating that, due to his assault on another inmate, a hearing would be held to determine whether he should be placed in the Administrative Segregation Program. (*Id.* ¶ 24; Exs., ECF No. 53-1, at 45.) On November 25, 2013, the plaintiff participated in the hearing and introduced his written statement documenting what had occurred during the altercation with Inmate Bermudez. (*Id.* ¶¶ 29, 77; Exs., ECF No. 53-1, at 46-48.) Counselor Supervisor Bachon and Correctional

Treatment Officer Mortimer acted as the plaintiff's advocates in connection with the hearing. (*Id.* Exs., ECF No. 53-1, at 45-46.)

During the hearing, Officer Griggs and Counselor Supervisor Bachon considered information relevant to the decision of whether to place the plaintiff on administrative segregation, but did not interview witnesses. (*Id.* ¶ 33; 78.) At the conclusion of the hearing, Hearing Officer Griggs and Counselor Supervisor Bachon recommended that the plaintiff's placement in the Administrative Segregation Program be suspended for 120 days and that the plaintiff be placed in general population during the 120-day period. (*Id.* ¶¶ 34, 78.) On December 3, 2013, Director Lewis issued a decision overriding the recommendation of Hearing Officer Griggs and Counselor Supervisor Bachon and approved the plaintiff's placement in the Administrative Segregation Program. (*Id.* ¶¶ 39-40, 81.) The plaintiff appealed his placement in administrative segregation to then Deputy Commissioner Scott Semple who, on January 17, 2014, denied the appeal and approved the plaintiff's placement. (*Id.* ¶ 83; Exs., ECF No. 53-2, at 5.)

The plaintiff has been diagnosed with several mental health disorders, including post-traumatic stress disorder, borderline personality disorder, and anti-social personality disorder and also suffers from suicidal thoughts. (¶¶ 14-15.) The Department of Correction has classified the plaintiff as a seriously mentally ill inmate. (*Id.* ¶ 13.) During the plaintiff's confinement in the Administrative Segregation Program, Commissioner Semple, District Administrators Quiros and Maldonado, Wardens Erfe, Cournoyer, and Mulligan, Captains Robles and Johnson, Drs. Frayne and Gagne, and Social Worker Longo were aware of the plaintiff's mental health conditions and needs as documented in his mental health records. (*Id.* ¶¶ 60-62.) The plaintiff also verbally

informed these defendants about his mental health disorders and need for treatment.  (*Id.* ¶ 62.)

There are no mental health units at Northern or Cheshire.  (*Id.* ¶ 21.)  During a 792-day period, during which he was confined at Northern and Cheshire, the plaintiff submitted at least eighteen requests for mental health evaluations and treatment.  (*Id.* ¶¶ 91, 94.)  Drs. Gagne and Frayne and Social Worker Longo failed to periodically review or assess the plaintiff's mental health conditions every thirty days and did not develop an adequate mental health plan for the plaintiff.  (*Id.* ¶¶ 54, 56, 96, 101-02.)

On February 7, 2016, the plaintiff sent a request to speak with a mental health professional.  (*Id.* ¶ 91.)  On February 10, 2016, Social Worker Longo indicated that he had spoken to the plaintiff about his concerns in a private setting on February 9, 2016, he had only received one other request for mental health treatment from plaintiff dated February 5, 2016, and he would inform the psychiatrist that the plaintiff wanted to speak to him.  (*Id.* ¶ 92; Exs., ECF No. 53-2, at 8.)   The plaintiff submitted a grievance to the mental health department at Northern on February 16, 2016.  (*Id.* ¶ 93; Exs., ECF No. 53-2, at 9.)  In that grievance, the plaintiff claimed that since his arrival at Northern on September 1, 2015, he had spoken to Dr. Frayne twice and Social Worker Longo once and that he had submitted nine to eleven requests regarding major mental health concerns.  (*Id.*)  The plaintiff requested that someone from the mental health department respond to his serious mental health needs.  (*Id.*)  Dr. Frayne responded to the grievance indicating that he had repeatedly asked the plaintiff to meet privately with him to discuss his concerns, Social Worker Longo had met with the plaintiff on one occasion, Dr. Gagne had evaluated the plaintiff on February 23, 2016, and mental health professionals had offered the plaintiff the "Start Now" program.  (*Id.*)

During his placement in administrative segregation, the plaintiff was confined to a small cell for twenty-three hours a day, was permitted to shower only three times a week, was required to wear full restraints whenever he left his cell, was not permitted to have any contact visits, was required to eat his meals in his cell, was limited to one telephone call a week, was not permitted to participate in congregate programming or religious services, and could not be considered for a work assignment. (*Id.* ¶ 26.) These conditions of confinement caused the plaintiff to hear voices and experience delusions, hallucinations, paranoid, suicidal, and racing thoughts, bewilderment, and loss of sleep and memory. (*Id.* ¶ 58.) Commissioner Semple, District Administrators Quiros and Maldonado, Wardens Erfe, Cournoyer, and Mulligan, Captains Robles and Johnson, Drs. Frayne and Gagne, and Social Worker Longo were aware of the plaintiff's mental health needs and the effects of the conditions of confinement in administrative segregation on his mental health. (*Id.* ¶¶ 59-63.)

Commissioner Semple, Wardens Erfe, Cournoyer, and Mulligan, Directors Lewis and Maiga, Counselor Supervisor Bachon, District Administrators Maldonado and Quiros, and Captains Robles and Johnson confined the plaintiff in administrative segregation at Northern and Cheshire for years and did not perform regular, periodic reviews to determine the need for his continued confinement in administrative segregation after his initial placement in November 2013. (*Id.* ¶¶ 22, 28, 95-98, 109-112, 114.) The conditions of confinement at Northern have exacerbated the plaintiff's mental illness and caused him to suffer injuries to his knees and back. (*Id.* ¶¶ 57, 91, 113.)

Wardens Erfe, Cournoyer, and Mulligan, Captain Robles, Counselor Supervisor Bachon, Directors Lewis and Maiga, and District Administrators Quiros and Maldonado subjected the

plaintiff to multiple phase regressions during his confinement within the Administrative Segregation Program at Cheshire and Northern. (*Id.* ¶¶ 51, 115-125.) These defendants failed to provide him with a hearing before each phase regression. (*Id.* ¶¶ 51, 115.) The plaintiff remained in administrative segregation for approximately four years. (*Id.* ¶ 71.)

David Maiga took over as the Director of Offender Classification and Population Management from Karl Lewis. (*Id.* ¶ 85.) In late October and early November 2015, the plaintiff wrote to Director Maiga regarding his placement in the Administrative Segregation Program based on his alleged assault of Inmate Bermudez during a fight on November 3, 2013. In a letter from the Office of Offender Classification and Population Management dated November 2, 2015, a counselor supervisor indicated that the Department of Correction had found the plaintiff guilty of an assault in connection with the November 3, 2013 physical assault of Inmate Bermudez and that the serious nature of the injuries caused to Inmate Bermudez constituted circumstances that met the rationale for the plaintiff's placement in the Administrative Segregation Program. (*Id.* ¶¶ 86, 89; Exs., ECF No. 53-2, at 7.)

The plaintiff sues the defendants in their individual capacities. (*Id.* ¶ 1.) He seeks nominal, compensatory and punitive damages and injunctive relief. (*Id.* ¶ 126.)

## III. Discussion

The defendants assert nine arguments in support of their motion to dismiss. They argue that the allegations in the second amended complaint fail to state a claim of deliberate indifference to serious medical needs, fail to state a claim of cruel and unusual punishment, fail to state a violation of the plaintiff's right to equal protection of the laws, fail to state a claim of a violation of the plaintiff's right to procedural due process, and fail to demonstrate supervisory

liability on the part of defendants Semple, Erfe, Cournoyer, Maldonado, Quiros and Mulligan. In addition, the defendants contend that the requests for injunctive and declaratory relief are barred by Prison Litigation Reform Act of 1996, the requests for compensatory and punitive damages are barred by 42 U.S.C. § 1977e(e), and they are entitled to qualified immunity.

**A.       Eighth Amendment Deliberate Indifference Claims**

The court construes the second amended complaint as asserting two types of Eighth Amendment claims, a deliberate indifference to mental health needs claim and an unconstitutional conditions of confinement claim.

**1.       Deliberate Indifference - Mental Health Needs**

The defendants argue that the plaintiff has not alleged facts or provided evidence to prove that he suffered from a serious medical need.   In connection with this argument, defendants Semple, Erfe, Cournoyer, Maldonado, Quiros and Mulligan contend that the plaintiff has failed to allege their personal involvement in the failure to provide him with mental health care at Northern and Cheshire.   The defendants argue that the plaintiff has failed to meet either prong of the Eighth Amendment standard applicable to a claim of deliberate indifference to health

Deliberate indifference by prison officials to a prisoner's serious medical or mental health needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment); *Atkins v. County of Orange,* 372 F.Supp.2d 377, 408 (S.D.N.Y.2005) ("In the Second Circuit, it is equally clear that psychiatric or mental health care 'is an integral part of medical care' and falls under the rule laid out in *Estelle* which requires that such care be

10

provided to prisoners.")  To state a claim for deliberate indifference to a serious medical or mental health need, a plaintiff must meet a two-pronged test.  Under the first prong, a plaintiff must demonstrate that his or her medical or mental health need was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).

Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions.  *See Salahuddin*, 467 F.3d at 279-80.  Mere negligent conduct does constitute deliberate indifference.  *See id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Absent allegations demonstrating the personal involvement of a defendant in a constitutional violation, a plaintiff is not entitled to an award of damages. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).   Thus, supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates.  *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.")

To state a claim for supervisory liability, the plaintiff must allege facts to meet one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional conduct, (2) the defendant failed to remedy a wrong after being informed of the wrong in a report or appeal, (3) the defendant created or approved a policy or custom that sanctioned unconstitutional conduct or permitted such a policy or custom to continue, (4) the defendant was grossly negligent in their supervision of the officers who engaged in the unconstitutional conduct, or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to take action in response to information that unconstitutional conduct was occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The plaintiff must also allege facts to demonstrate a causal link between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Defendants argue that under the Supreme Court's decision in *Iqbal*, a supervisor can be held liable only "through the official's own individual actions." *Id.* at 676. The defendants contend that only the first of the *Colon* categories remains in effect in determining a supervisor's liability for a constitutional violation. Although the decision in *Iqbal* arguably casts doubt on the continued viability of some of the categories for supervisory liability set forth in *Colon*, the Second Circuit has not revisited the criteria for supervisory liability following *Iqbal*. *See Shaw v. Prindle*, 661 F. App'x 16, 18 n.2 (2d Cir. 2016) ("Although the Supreme Court's decision in . . . *Iqbal* . . . , may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal's* impact on *Colon* in this case, for [Shaw's] [amended] complaint did not adequately plead [Larkin's or Russo's] personal involvement even under *Colon*.") (quoting *Grullon v. City of New Haven*, 720

F.3d 133, 139 (2d Cir. 2013)); *Rispardo v. Carlone*, 770 F.2d 97, 117 (2d Cir. 2014) ("'We have not yet determined the contours of the supervisory liability test . . . after *Iqbal.*'")   As judges in this district have generally continued to apply *Colon*, I will do so as well.  *See Ellerbe v. Jasion*, No. 3:12-CV-00580 MPS, 2015 WL 1064739, at *6 (D. Conn. Mar. 11, 2015) (citing cases).

The defendants initially contend that the plaintiff has not alleged that his "complaints of pain" constituted a serious medical need.  *See* Mem. Supp. Mot. Dismiss, ECF No. 60-1, at 14.  This argument is not responsive to the allegations in the second amended complaint given that the plaintiff's claims relate to mental health conditions.

The plaintiff has alleged that prior to his confinement in administrative segregation, he had been diagnosed with several mental health disorders, including post-traumatic stress disorder, borderline personality disorder, and anti-social personality disorder and also suffered from suicidal thoughts.  *See* Second Am. Compl. ¶¶ 14-15).  The defendants argue that the plaintiff has not alleged facts sufficient to establish that his mental issues were serious.

Courts have held that suicidal thoughts or attempts to commit suicide constitute serious mental health conditions.  *See, e.g., Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (W.D.N.Y.2013) ("A propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition, as are the health effects that allegedly flow[ ] from ... mental illness, such as lacerations from cutting and hanging"); *Jones v. Rock*, No. 9:12–cv–0447 (NAM/TWD), 2013 WL 4804500, at *15 (N.D.N.Y. Sept. 6, 2013) (same); *Loadholt v. Lape*, No. 9:09–CV–0658 (LEK/RFT), 2011 WL 1135934, at *3 (N.D.N.Y. Mar. 3, 2011) ("This Court, in accord with multiple decisions in this Circuit, recognizes that allegations of mental illness, especially when accompanied by suicidal ideation, state a plausible claim that Plaintiff's mental health needs were sufficiently

serious.") The court concludes, after reviewing the allegations in the second amended complaint, that the plaintiff has plausibly alleged that he suffered from several serious mental health conditions. The motion to dismiss on the ground that the allegations in the second amended complaint do not meet the objective prong of the Eighth Amendment standard is denied.

With regard to the subjective prong of the Eighth Amendment standard, the defendants argue, without discussion, that the plaintiff has failed to "prove" that any defendant knew and disregarded an excessive risk to his health or safety. *See* Mem. Supp. Mot. Dismiss at 14. But a motion to dismiss under Rule 12(b)(6) tests allegations, not proof. As indicated above, in deciding a motion to dismiss, the court accepts the truth of the allegations in the amended complaint and determines whether the allegations state a plausible claim for relief. Thus, the argument that the Eighth Amendment claim should be dismissed for lack of evidentiary support is misplaced.

The plaintiff has alleged that defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, Mulligan, Robles, Johnson, Frayne, Gagne, and Longo were aware of his mental health conditions both from his mental health records and his verbal statements regarding these conditions. The plaintiff asserts that there were no mental health treatment units at Northern or Cheshire and that defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, and Mulligan failed to hire sufficient staff to treat mentally ill inmates, including himself, at those facilities. Furthermore, defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, Mulligan, Robles, Johnson, Frayne, Gagne, and Longo were aware of the plaintiff's mental health needs and the effects of the conditions of confinement in administrative segregation on his mental health. See Second Am. Compl. ¶¶ 59-63. Despite this knowledge, defendants failed to take any action to

treat him or facilitate treatment for his mental illness and continued to confine him in administrative segregation under conditions that exacerbated his mental health.

The court concludes that the plaintiff has plausibly alleged that defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, Mulligan, Robles, Johnson, Frayne, Gagne, and Longo were aware of the lack of mental health units at Cheshire and Northern, his need for treatment for serious mental health conditions, and that the conditions of confinement in administrative segregation at Cheshire and Northern had exacerbated his mental health, but failed to take any action to correct these deficiencies or address the plaintiff's need for treatment. Thus, the plaintiff has plausibly alleged the involvement of defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, and Mulligan at least under the second and fifth *Colon* categories. Thus, the motion to dismiss on the ground of lack of personal involvement of defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, and Mulligan and on the ground that the allegations fail to meet the subjective prong of the Eighth Amendment deliberate indifference to mental health needs standard is denied.

### 2. Deliberate Indifference - Unconstitutional Conditions

The plaintiff alleges that the conditions at Northern and Cheshire during his confinement in the Administrative Segregation Program were restrictive and harsh and exacerbated his mental health. He describes the conditions as follows: confinement to a "small sensory deprivation cell for 23 hours a day," showers three times a week, no contact visits, meals eaten in the cell, one telephone call a week, no congregate programming or religious services, no work assignments, and ambulation outside of the cell in full restraints. *See id.* ¶ 26.

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a life necessity or a substantial risk of serious harm to his health. The Supreme Court has identified the following basic human needs of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Rhodes,* 452 U.S.at 348.

To meet the subjective element, the inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. The subjective element requires that the inmate allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280 (citing *Farmer v Brennan*, 511 U.S. 825, 389-40 (1994)).

In support of their argument that the claim of unconstitutional conditions of confinement should be dismissed, the defendants contend that the plaintiff has not satisfied either prong of the Eighth Amendment standard. The plaintiff has alleged that the restrictive conditions in administrative segregation as well as the solitary nature of his confinement in the segregation units at Northern and Cheshire caused him to hear voices and experience delusions, hallucinations, paranoid, suicidal, and racing thoughts, bewilderment, loss of sleep and memory, and mental anguish. *See* Second Am. Compl. ¶¶ 57-58. In addition, the restrictive conditions have caused physical injuries to the plaintiff's knees and back. *See id.* ¶ 113. The court concludes that the plaintiff has plausibly alleged that the conditions as applied to him, an inmate with serious mental health issues, created a serious risk of harm to his mental health. Furthermore, the plaintiff has alleged that defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, Mulligan, Robles, Johnson, Frayne, Gagne, and Longo were aware of his mental health needs and the effects of the conditions of confinement in administrative segregation on his mental health, but failed to take any action to correct or alleviate the conditions. *See id.* ¶¶ 59-63. Thus, the plaintiff has asserted that defendants were deliberately indifferent to the serious risk of harm to his mental health. The motion to dismiss the Eighth Amendment deliberate indifference to unconstitutional conditions of confinement claim is denied.

**B.     Fourteenth Amendment Equal Protection Claim**

The first amended complaint included a section titled "Discrimination of Plaintiff." First Am. Compl., ECF No. 7 at 9-12. The allegations in that section included examples of the ways in which other inmates, who had been charged with assault or possession of a dangerous weapons, were treated differently than the plaintiff and were not recommended for or placed in

the Administrative Segregation Program.  *See id.* at 10-11 ¶¶ 57-70.  The second amended

complaint does not include these same allegations.  Thus, it is apparent that the plaintiff has

abandoned this equal protection claim.

The second amended complaint does, however, include a section titled "Discrimination

of Plaintiff."  Second Am. Compl. at 8.  In that section, the plaintiff alleges in a conclusory

fashion that the defendants discriminated against him "under their own policy and creation of

State of Connecticut Administrative Directives 9.2, 9.4, and 9.4.1 that led to [his] denial and

continuation in Administrative Segregation."  *Id.* ¶ 41.  The plaintiff generally contends that

these directives are "unconstitutionally vague as applied to[ him and . . . [facially] because they

do not give a person or ordinary intelligence a reasonable opportunity to know what is prohibited

and grants officials unfettered discretion to arbitrarily discipline and punish."  *Id.* at ¶ 42.  The

defendants argue that these allegations of discrimination are conclusory and that they fail to state

a violation of the plaintiff's equal protection rights.

The Equal Protection Clause protects individuals from invidious discrimination.  It does

not mandate identical treatment for each individual or group of individuals. Instead, it requires

that similarly situated persons be treated the same.  *See City of Cleburne v. Cleburne Living Ctr.*,

473 U.S. 432, 439-40 (1985).  To state an equal protection claim, a plaintiff must allege facts

showing that: (1) he was treated differently from similarly situated individuals and (2) that the

difference in or discriminatory treatment was based on "'impermissible considerations such as

race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad

faith intent to injure a person.'"  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)

(quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

Alternatively, an equal protection claim may be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). To state a claim under the class of one theory, plaintiffs "must show 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

There are no facts to support the statements in paragraphs 41 and 42 or to indicate how these allegations constitute discrimination in violation of the plaintiff's equal protection rights. Nor has the plaintiff alleged facts to suggest that any defendant treated him in a discriminatory manner because of his membership in a protected class.

In a separate section of the second amended complaint, the plaintiff mentions another inmate named Thomas Caves who was charged with assault on a Department of Correction employee, but was not approved for placement in administrative segregation. *See* Second Am. Compl. ¶¶ 74-75; Exs., ECF No. 53-1, at 41-42. The plaintiff has not alleged that any defendant treated him differently than other similarly situated prisoners who initiated a fight with or assaulted another inmate that resulted in serious injuries to that other inmate. Thus, the plaintiff has not asserted facts to show the necessary degree of similarity between himself and Inmate Caves in order to state a class of one equal protection claim. *See Ruston*, 610 F.3d at 60 (since plaintiffs failed to allege facts showing that properties sufficiently similar to theirs were treated more favorably by defendants, plaintiffs failed to state a "class of one" equal protection claim); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (The plaintiff's circumstances and the

other person's circumstances must be "*prima facie* identical.") (internal quotation marks and citation omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Webb v. Arnone*, No. 3:17-CV-01624 (SRU), 2018 WL 3651333, at *5 (D. Conn. Aug. 1, 2018) (concluding inmate "ha[d] not met the requirements necessary to state a plausible class-of-one equal protection claim" because he had failed to assert any "facts to show that he was essentially identical to the other former death row inmates who are no longer subject to the out-of-cell restraint policy"); *Lieberman v. City of Rochester*, No. 07-CV-6316L, 2011 WL 13110345, at *4 (W.D.N.Y. Apr. 29, 2011) (dismissing "class of one" equal protection claim because plaintiffs' failed to "allege[] any facts showing that the[] [defendant] officers, or Rochester police officers generally, have acted differently when confronted by a situation similar to the incident here. . . [and] . . . therefore failed to plead facts that would support an inference that they were singled out for an improper purpose."), *aff'd*, 558 F. App'x 38 (2d Cir. 2014)

The facts as alleged in the second amended complaint do not state a plausible class-based equal protection claim or a plausible class of one equal protection claim. *See Iqbal*, 556 U.S. at 678 (complaint including only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard) (quoting *Twombly*, 550 U.S. at 555-57). Accordingly, the motion to dismiss the equal protection/discrimination claim is granted.

## C.    Fourteenth Amendment Due Process Claim

The plaintiff asserts several procedural due process claims in the second amended complaint. He alleges that the defendants denied him due process in connection with his initial placement in the Administrative Segregation Program, the defendants failed to engage in regular,

periodic reviews during his continued confinement in administrative segregation, and that the

defendants did not provide him with hearings in connection with his transfers from Cheshire to

Northern when they sent him back to a prior phase of the Administrative Segregation Program.

These claims were asserted in the first amended complaint.  The plaintiff also raises new

allegations regarding the issuance of a disciplinary report on November 3, 2013 for assault in

connection with his altercation with Inmate Bermudez.  The plaintiff now claims that on

November 3, 2013, an officer issued him a disciplinary report for fighting with Inmate Bermudez

and that he pleaded guilty to that charge and not the assault charge.  The plaintiff seeks to

challenge the disciplinary report charging him with assault and his alleged plea of guilty to that

charge.

### 1.      Challenges to Initial Placement in Administrative Segregation,

The Fourteenth Amendment to the United States Constitution provides that a State shall

not "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1.  The standard analysis for a claim of a violation of procedural due process

"proceeds in two steps: We first ask whether there exists a liberty or property interest of which a

person has been deprived, and if so we ask whether the procedures followed by the State were

constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

The defendants characterize the plaintiff's due process claims as asserting a violation of a

property interest and cite cases setting forth the standard for a claim of a deprivation of property

absent due process.  *See* Mem. Supp. Mot. Dismiss at 24-25.  It is evident that this argument is

misplaced given that the plaintiff's due process claims are based on a deprivation of a liberty

interest, *i.e.*, an interest in not being confined in administrative segregation at all or for a continued period of time.

Despite the fact that the defendants' argument is not responsive to the plaintiff's procedural due process claims as asserted in the second amended complaint, the court will review the claims pursuant to 28 U.S.C. § 1915A to determine their plausibility under the standard set forth in *Iqbal*, 556 U.S. at 678. Section 1915A requires a district court to review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint— (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered a due process claim asserted by inmates who had been classified for placement in a high security state prison for safety and security, rather than disciplinary reasons. In determining whether the inmates had a liberty interest in avoiding confinement in the very restrictive, maximum security prison for an indefinite period of time, the Court applied the standard set forth in *Sandin v. Connor*, 515 U.S. 472 (1995)). *See id.* at 223 ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 at 484.). The Court concluded that the restrictive conditions at the Ohio State Penitentiary "taken together [] impose[d] an atypical and significant hardship" on inmates and gave "rise to a liberty interest in their avoidance." *Id.* at 224.

In view of the plaintiff's confinement in the Administrative Segregation Program for over two years and the conditions under which the plaintiff claims to have been confined on that status, the court concludes that the plaintiff has stated a plausible claim that his placement in the Administrative Segregation Program violated his liberty interest.[1]

Once a liberty interest has been implicated, the court determines whether a plaintiff has received the procedural safeguards to which he was entitled before the deprivation of that liberty interest occurred. Thus, the court considers whether the process provided to the plaintiff at the time of his initial placement in the Administrative Segregation Program was sufficient.

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court noted that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence" and that inmates "should reasonably anticipate" being confined in "administrative segregation" "at some point in their incarceration." *Id.* 468. The Court held that in connection with an inmate's placement on administrative segregation when "an inmate represents a security threat" or "pending completion of an investigation into misconduct charges against him," he or she "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476. As long as these two requirements are met, the non-adversary

---

[1] *Sandin* does not eliminate consideration of the language of state regulations in deciding whether an inmate has a protectable liberty interest; it just makes clear that such language is not enough. *Sandin¸* 515 U.S. at 483-84 (limiting protectable state-created interests in liberty to these—involuntary freedom from restraints that "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life.") Although the parties have not briefed this issue, I have previously found that the language of DOC administrative directives provide the basis for a liberty interest in avoiding Administrative Segregation. *See Ellerbe*, 2015 WL

proceeding is held "within a reasonable time following the inmate's transfer" to administrative segregation, "and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Id.* & n.8. In *Wilkinson*, 545 U.S. at 228-29, the Supreme Court concluded the "informal, nonadversary procedures set forth in . . . *Hewitt v. Helms*, 459 U.S. 460 (1983), constituted appropriate procedural safeguards for inmates faced with indefinite confinement in restrictive, maximum security prison.

The plaintiff alleges that he was placed in the Administrative Segregation Program as punishment. Thus, he contends that he should have been afforded the heightened process set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff*, the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action. *Id.* at 564-66. An inmate has no right to retained or appointed counsel at a disciplinary hearing, but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate. *Id.* at 570.

There are no facts to suggest that the plaintiff's placement in the Administrative Segregation Program was made for punitive reasons rather than for purposes of safety and security. Even under the standard set forth in *Wolff*, however, the plaintiff received all the process that he was due.

1064739 at *3-4.

The plaintiff concedes that he received notice of the administrative segregation hearing and that the notice set forth the basis for holding the hearing; that he was assigned to an advocate, that he participated in the hearing; and that he submitted a written statement in support of his version of what transpired during the altercation with Inmate Bermudez. *See* Second Am. Compl. ¶¶ 24, 29, 77, Exs., ECF No. 53-1, at 45-48. He challenges the decision made by defendants Griggs, Bachon and Lewis after the hearing as not based on consideration of all the available evidence, including information pertaining to his claim of self-defense, and as lacking sufficient evidence to support the conclusion that he should be placed in the Administrative Segregation Program.

Under both the *Wolff* and *Hewitt* standards, the decisions to place an inmate in administrative or punitive segregation must be based on "some evidence." *See Superintendent v. Hill,* 472 U.S. 445, 454 (1985)(procedural due process requires that decision to revoke good time credits in connection with prison disciplinary hearing be "supported by some evidence in the record"); *Taylor v. Rodriguez,* 238 F.3d 188, 194 (2d Cir. 2001) (holding that a prisoner facing confinement in close custody must be provided with a meaningful notice of the basis for the decision as well as a decision that is based upon "some evidence.")(quoting *Hill,* 472 U.S. at 455–56); *Davis v. Barrett*, No. 02-CV-0545 SR, 2011 WL 2421109, at *3 (W.D.N.Y. June 13, 2011) ("In accordance with the standards for such a hearing, the Court must find "some evidence" in the record that could support the hearing officer's conclusion that placement in administrative segregation was warranted.")(citation omitted). The determination of whether the standard of "some evidence" has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead the

relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455–56.

The classification hearing officer, defendant Griggs and the plaintiff's advocate, defendant Bachon, considered the evidence presented, including the plaintiff's statement, the incident report prepared by custody officials at Corrigan and a memorandum from Warden Erfe recommending that the plaintiff be considered for placement on administrative segregation. *See* Second Am. Compl., Exs., ECF No. 53-2 at 2, 4. The Incident Report included a statement from the plaintiff's cellmate indicating that Inmate Bermudez had made threats against the plaintiff just prior to the altercation. *See id.*, Exs., ECF No. 53-1, at 3. The Incident Report also included statements by two lieutenants regarding the plaintiff's admission to assaulting Inmate Bermudez, the lack of injuries sustained by the plaintiff, the absence of discovery of a weapon at the scene of the altercation, and a Connecticut State Police officer's intention to file an assault charge against the plaintiff. *See id.* at 1-2. The plaintiff's statement included assertions regarding his decision to take the initiative and confront and fight with Inmate Bermudez in response to threats Inmate Bermudez's threats to harm him earlier in the evening and that Inmate Bermudez got "hurt bad" during the altercation. *See id.* 47-48.

Defendants Griggs and Bachon recommended plaintiff's placement in administrative segregation but suggested that the placement be suspended for 120 days because it appeared that the altercation involving the assault by the plaintiff was an isolated incident. *See id.*, Exs., ECF No. 53-2, at 2. They recommended that if, the plaintiff did not commit a Class A offense with 120 days, he would not be re-instated to administrative segregation. *See id.* Defendant Lewis chose not to accept the recommendation of Griggs and Bachon and approved the plaintiff for

immediate placement in administrative segregation based on the seriousness of the assault on Inmate Bermudez by the plaintiff and the disruptive nature of the plaintiff's behavior in connection with the assault. *See id.* Defendant Semple upheld the placement of the plaintiff in the Administrative Segregation Program on the ground that the plaintiff posed a threat to the safety and security of staff and other inmates. *See id.* at 5.

The court concludes that the procedural due process requirements set forth in *Hewitt* and *Wolff* were met in connection with the plaintiff's placement in the Administrative Segregation Program as of December 3, 2013. In addition, the recommendation by defendants Griggs and Bachon and the decision by defendant Lewis to immediately place the plaintiff in the Administrative Segregation Program were warranted given that the plaintiff posed a threat to the safety and security of other inmates and the facility due to his altercation with and assault of another inmate which caused the inmate to be sent to a hospital for treatment of serious injuries. Accordingly, the procedural due process claim asserted against defendants Griggs, Lewis, Semple, and Bachon in connection with the plaintiff's initial placement in the Administrative Segregation Program is dismissed.

### 2.     Continued Confinement in Administrative Segregation Phase Regressions in Administrative Segregation

The plaintiff alleges that during his confinement in the Administrative Segregation Program, defendants Semple, Erfe, Cournoyer, Mulligan, Lewis, Maiga, Bachon, Maldonado, Quiros, Robles, and Johnson failed to engage in periodic reviews of his status to determine whether his continued confinement was warranted. In addition, defendants Maldonado, Erfe, Cournoyer, Mulligan, Robles, Bachon, Lewis, Maiga, and Quiros failed to hold proceedings of any kind in connection with his regression from phases two and three of the Administrative

27

Segregation Program to phase one of the Program on three occasions and his associated transfers back to Northern from Cheshire in connection with these phase regressions. The court concludes that these allegations state plausible procedural due process claims against defendants Semple, Erfe, Cournoyer, Mulligan, Lewis, Maiga, Bachon, Maldonado, Quiros, Robles, and Johnson. *See Hewitt*, 459 U.S. at 477 n.9 (observing that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate" and hence, the need to maintain the inmate in restricted housing must be subject to meaningful "periodic review" by prison officials). The procedural due process claims relating to the plaintiff's continued confinement on administrative segregation status without meaningful, periodic reviews and the claim that defendants failed to provide him with hearings in connection with his regressions back to phase one of the administrative segregation program on three occasions will proceed.

### 3. Challenge to Issuance of Disciplinary Reports

The complaint and first amended complaint included facts related to the issuance of a disciplinary report to the plaintiff for assault on an inmate in connection with his altercation with Inmate Bermudez. *See* Compl., ECF No. 1 ¶¶ 52-53, 55; First Am. Compl., ECF No. 7 ¶¶ 72-73. The plaintiff alleged that he met with an investigator and agreed to plead guilty to the assault charge. *See id.* Neither the complaint, nor the first amended complaint named the prison official who issued the disciplinary report for assault or the investigator who met with the plaintiff in connection with his plea of guilty to that report and did not include a challenge to the issuance of the disciplinary report for assault. See Compl. ¶¶ 1-109; First Am. Compl. ¶¶ 1-125.

On October 18, 2017, the court denied the plaintiff leave to file an amended complaint and struck the supplemental complaint that the plaintiff had filed on July 24, 2017, without

permission.  *See* Ruling and Order, ECF No. 49.  In that ruling, the court informed the plaintiff

that any challenge to the disciplinary report issued to him on November 3, 2013 for assault was

barred by the three-year statute of limitations.  *See id.* at 7-8 (citing *Lounsbury v. Jeffries*, 25

F.3d 131, 134 (2d Cir. 1994) (holding general personal injury statute of limitations set forth in

Connecticut General Statutes § 52-577 should be applied to the filing of section 1983 claims

arising in Connecticut)).   In filing the operative second amended complaint on December 1,

2017 in opposition to the defendants' first motion to dismiss, however, the plaintiff chose to

include allegations regarding the issuance of the disciplinary report for assault as well as new

allegations regarding another disciplinary report issued on November 3, 2013 for fighting.  *See*

Second Am. Compl. ¶¶ 46, 66-73, 85-88.  The plaintiff now suggests that he did not plead guilty

to the disciplinary report charging him with assault but pleaded guilty to a disciplinary report

charging him with fighting and seeks to challenge his alleged guilty plea to the assault charge.

These new allegations are barred by the statute of limitations and are dismissed.  *See* 28 U.S.C. §

1915A(b)(1).

### D.     Request for Compensatory Damages

The defendants argue that plaintiff's claims for compensatory damages are barred by 42

U.S.C. § 1997e(e), which states that "no Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

while in custody without a prior showing of physical injury."  The Second Circuit has

determined, however, that this prohibition applies only to preclude a plaintiff from recovering

compensatory damages absent a demonstration of physical injury.  *See Thompson v. Carter*, 284

F.3d 411, 417 (2d Cir. 2002).  (Section 1997e(e) "applies to claims in which a plaintiff alleges

constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.") Thus, the plaintiff may still recover "compensatory damages for *actual injury*, nominal, and punitive damages." *Id.* at 419 (emphasis added).

The plaintiff has alleged that his confinement in administrative segregation for approximately four years caused injuries to his legs and back. *See* Second Am. Compl. ¶¶ 57, 91, 113. Because there are allegations that the plaintiff suffered some physical injuries as a result of being confined in administrative segregation, the motion to dismiss the request for compensatory damages as barred by 42 U.S.C. § 1997e(e) is denied.

### E. Request for Punitive Damages

The defendants argue that 18 U.S.C. § 3626, which governs "[a]ppropriate remedies with respect to prison conditions," precludes any award for punitive damages. Section 3626(a)(1) of Title 18 of the United States Code provides:

> (1) Prospective relief.--(A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A). Prospective relief is defined as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). The defendants rely on a case from the United States District Court for the Western District of Pennsylvania, *Margo v. Bedford County*, No.

3:04-cv-147-KAP-KRG, 2008 WL 857507 (W.D. Pa. 2008), in support of this argument.[2]  The

court does not agree that 18 U.S.C. § 3626(a)(1)(A) was intended to preclude an award of

punitive damages in all civil cases filed by prisoners.  *See Morgan v. Comm'r Dzurenda*, No.

3:14-CV-966 (VAB), 2015 WL 5722723, at *10 (D. Conn. Sept. 29, 2015) ("The Court declines

to follow th[e] decision [in *Margo v. Bedford County*, 2008 WL 857507], and agrees with later

case law that 18 U.S.C. § 3626(g)(7), which defines the term "prospective relief" as "all relief

other than compensatory monetary damages," did not intend to preclude an award of punitive

damages in all prisoner litigation.") (citing *Douglas v. Jin*, Civil Action No. 11-0350, 2014 WL

1117934, at **4-5 (W.D. Pa. March 20, 2014)); *see also Houser v. Folino*, No. 2:10-CV-00416,

2015 WL 7291787, at *4 (W.D. Pa. Nov. 16, 2015) (declining to adopt interpretation of 18

U.S.C. § 3636(a)(1)(A) as prohibiting punitive damages awards in prisoner actions and following

interpretation of 18 U.S.C. § 3636(a)(1)(A) as permitting awards of punitive damages in

accordance with the court in *Douglas*, 2014 WL 1117934, at *3).  Accordingly, the motion to

dismiss on the ground that the request for punitive damages is barred by 18 U.S.C. § 3626 is

denied.

The defendants argue further that the plaintiff is not entitled to punitive damages because

their "alleged actions during the investigation were wholly in accordance with their assigned

duties and consistent with their employment with the Department of Correction."   The

---

[2] Although the defendants cite one other case in support of their argument that 18 U.S.C.
§ 3626 precludes any award of punitive damages, their reliance on this case is misplaced.  In
*Coleman v. Rahija*, 114 F.3d 778, 786-88 (8th Cir. 1997), the Eighth Circuit addressed the
standard for a district court to award punitive damages and noted that "[t]he focus, in
determining the propriety of punitive damages, is on the intent of the defendant . . . and whether
the defendant's conduct is of the sort that calls for deterrence and punishment over and above that
provided by compensatory awards") (citations omitted).  Thus, the Eighth Circuit did not hold

31

defendants further contend that they "were not impelled by 'extortion, conspiracy or blackmail' in their exploration for the truth and identi[t]y of the corrupt official." Clearly this argument is not addressed to the allegations in the second amended complaint or this case.

To the extent that the defendants are attempting to argue that the plaintiff is not entitled to punitive damages because he has not alleged that they engaged in conduct that was motivated by evil intent or involved recklessness or callous indifference to the rights of others, the argument is unavailing. The court concludes that the plaintiff has sufficiently alleged that the defendants conduct involved a reckless disregard or callous indifference to his federally protected rights under the Eighth and Fourteenth Amendments. Thus, the plaintiff has asserted sufficient facts to show that punitive damages may be justified if he prevails in this action. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages are available in a section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"). Accordingly, the motion to dismiss the request for punitive damages on the ground that the conduct alleged in the second amended complaint does not meet the standard for such a damages award is denied.

### F.      Injunctive and Declaratory Relief

The defendants argue that 18 U.S.C. § 3626 prohibits the injunctive and declaratory relief sought by the plaintiff. The second amended complaint does not include a request for declaratory relief. The plaintiff does seek injunctive relief in the form of an order directing the defendants to send him to Whiting Forensic Hospital for a mental health evaluation and treatment. *See* Second Am. Compl. ¶ 126.

---

that punitive damages were unavailable under 18 U.S.C. § 3626.

The defendants do not explain how 18 U.S.C. § 3626 bars the request for injunctive relief. Rather, the defendants argue that a request for injunctive relief becomes moot when a plaintiff is discharged or transferred to another facility. They contend that the request for injunctive relief is moot because the allegations in the second amended complaint pertain to conditions at Cheshire and Northern and the plaintiff is incarcerated at Corrigan. As indicated above, however, the plaintiff is currently incarcerated at Cheshire. Furthermore, the request for injunctive relief is not related to conditions at a particular facility and thus has not been mooted by transfer. The motion to dismiss the request for injunctive relief is denied.

### G.      Qualified Immunity

Defendants argue that they are entitled to qualified immunity because the plaintiff's claims lack merit and their conduct was reasonable. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v, Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view of the particular circumstances surrounding the case to be decided. *See Pearson*, 555 U.S. at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 731, 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* "[A] broad general proposition" does not constitute a clearly established right.  *Reichle v. Howards*, 566 U.S. 658, 665 (2012).  Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  *Id.* (quoting *Anderson*, 483 U.S. at 640).

Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742).  "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case."  *Id.* (citing *Anderson*, 483 U.S. at 640).

The defendants' qualified immunity argument is addressed to the plaintiff's due process claim relating to his initial placement in administrative segregation and the claim of deliberate indifference to the plaintiff's mental health needs.  The defendants offer four short paragraphs in support of the applicability of the qualified immunity standard to the facts alleged and legal claims asserted by the plaintiff in the second amended complaint.  *See* Mem. Supp. Mot. Dismiss at 34-36.  In a prior section of this ruling, the court dismissed the procedural due process claim as it relates to the plaintiff's placement in administrative segregation in 2013.  Thus, the court

considers only the argument that the defendants are entitled to qualified immunity with regard to the Eighth Amendment claim of deliberate indifference to the plaintiff's mental health needs.

The defendants state that the conduct of the "correctional and medical staff were in accordance with their professional opinions and the policies and procedures within the Department of Correction and UCONN Correction Managed healthcare management." *Id.* at 35. The defendants offer no support for this statement. Nor does it appear to address the factual allegations in the second amended complaint related to the plaintiff's mental health care. The defendants further contend that the allegations regarding their knowledge of the plaintiff's mental health issues and their decision to continue his placement in administrative segregation despite these issues "fails for lack of legal sufficiency." *Id.* They argue that they are entitled to qualified immunity because their conduct was reasonable given the circumstances and did not violate any clearly established rights of the plaintiff.

The court has already concluded that the allegations regarding the plaintiff's mental health treatment state a plausible claim of deliberate indifference to his serious mental health needs. Furthermore, it was well-established as of 2013 that the "Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners' . . . which includes needs for mental health care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) and citing *Langley v. Coughlin,* 888 F.2d 252, 254 (2d Cir.1989)).

Viewing the allegations in second amended complaint as true and in light of established case law, the court cannot conclude that the defendants' failure to provide or facilitate treatment for the plaintiff's mental illness and their decisions to continue to confine him in administrative

segregation at Cheshire and Northern under conditions that exacerbated his mental health issues and without periodic review was objectively reasonable. Nor can the court conclude that the plaintiff will be unable to prove facts that would entitle him to relief under the Eighth Amendment. Accordingly, the motion to dismiss on the ground that defendants are entitled to qualified immunity is denied. *See Torres v. McGrath*, No. 3:15-CV-1558 (VLB), 2017 WL 3262162, at *4 (D. Conn. July 31, 2017) ("Based on its interpretation of the allegations as stated in the Initial Review Order, this Court cannot conclude that the plaintiff can prove no set of facts in support of his [Eighth Amendment] claim that would entitle him to relief. . . . For the foregoing reasons, Osden's qualified immunity defense is premature and must be dismissed at this stage of the proceeding.") (internal quotation marks and citation omitted).

IV.  **Conclusion**

The Motion to Dismiss [**ECF No. 60**] is **GRANTED** as to the Fourteenth Amendment equal protection/discrimination claim and **DENIED** in all other respects. The procedural due process claim asserted against defendants Griggs, Lewis, Semple, and Bachon in connection with the plaintiff's initial placement in the Administrative Segregation Program and the claims asserted in connection with a disciplinary report allegedly issued on November 3, 2013 charging the plaintiff with fighting and the claim seeking to challenge the plaintiff's alleged guilty plea to the disciplinary report charging him with assault on November 3, 2013 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims against defendant Griggs have been **DISMISSED**.

The case proceeds as to the following claims in the Second Amended Complaint: the Eighth Amendment claim of deliberate indifference to the plaintiff's mental health needs against

defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, Mulligan, Robles, Johnson, Frayne, Gagne, and Longo in their individual capacities and in their official capacities to the extent that the plaintiff seeks injunctive relief, the Eighth Amendment claim of deliberate indifference to unconstitutional conditions of confinement against defendants Semple, Erfe, Cournoyer, Maldonado, Quiros, Mulligan, Robles, Johnson, Frayne, Gagne, and Longo in their individual capacities, the Fourteenth Amendment procedural due process claim related to the plaintiff's continued confinement in administrative segregation without periodic reviews against defendants Semple, Erfe, Cournoyer, Mulligan, Lewis, Maiga, Bachon, Maldonado, Quiros, Robles, and Johnson in their individual capacities, and the Fourteenth Amendment procedural due process claim regarding the failure to hold proceedings of any kind in connection with the plaintiff's regression from phases two and three of the Administrative Segregation Program to phase one of the Program on three occasions and his associated transfers back to Northern from Cheshire in connection with these phase regressions against defendants Maldonado, Erfe, Cournoyer, Mulligan, Robles, Bachon, Lewis, Maiga, and Quiros in their individual capacities.

The court will permit the parties three months (90 days) from the date of this order to conduct discovery. Motions for summary judgment, if any, shall be filed within four months (120 days) of the date of this order.

SO ORDERED at Hartford, Connecticut this 10th day of September, 2018.

_____/s/_____
Michael P. Shea
United States District Judge